UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANGELA D. THACKERY,              )
                                 )
               Plaintiff,        )
                                 )
        v.                       )    CASE NO. 1:11-cv-01488-DML-TWP
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of the Social Security )
Administration,                  )
                                 )
               Defendant.        )

## Decision on Judicial Review

Plaintiff Angela D. Thackery applied on January 14, 2008, for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since July 31, 2006.  Acting for the Commissioner of the Social Security Administration following a hearing on February 25, 2010, an administrative law judge ("ALJ") found that Ms. Thackery is not disabled.  On September 21, 2011, the national Appeals Council denied review of the ALJ's decision, rendering the ALJ's decision for the Commissioner final.  Ms. Thackery filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.  The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Ms. Thackery challenges the ALJ's step three conclusion that her mental and physical impairments do not satisfy listing 12.05C, which describes a severity of mental retardation that is presumptively disabling. If the ALJ's decision is not reversed or remanded on this basis, she further contends remand is required because the vocational expert's opinion on which the ALJ relied at step five did not properly take into account Ms. Thackery's limited education and moderate difficulties in maintaining concentration, persistence, or pace.

For the reasons discussed below, the Commissioner's decision is AFFIRMED.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Ms. Thackery is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and

---

[1]   Two programs of disability benefits are available under the Social Security Act: Disability Insurance Benefits under Title II of the Act for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 401 *et seq.*, and Supplemental Security Income disability benefits under Title XVI of the Act for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The regulations applicable to DIB and SSI disability benefits are virtually the same and, for ease of reference, the DIB regulations are cited in this Order. The regulations governing DIB are found at 20 C.F.R. §§404.900-.999 and 20 C.F.R. §§404.1500-.1599. The parallel SSI regulations appear at 20 C.F.R. §§416.1400-.1499 (corresponding to 404.900-.999) and 20 C.F.R. §§416.900-.999 (corresponding to 404.1500-.1599).

work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545.  At the

3

fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity.  20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion.  *Id.*  The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). "Because the Commissioner is responsible for weighing the evidence, resolving conflicts, and making independent findings of fact, [a] Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner

to decide whether a claimant is or is not disabled." *Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999) (internal citation omitted).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). If an ALJ concludes that benefits should be denied, she must have first built an accurate, logical bridge between the evidence and her conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that detracts from the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

Ms. Thackery's assertion that the ALJ erred at step three turns on whether the ALJ erred in deciding that the requirements of listing 12.05C were not met. Even if the court finds that ALJ's step three analysis is supported by substantial evidence, Ms. Thackery alleges error at step five. She argues that because the hypothetical question to the vocational expert referenced a person with a "high school education" and Ms. Thackery had received only a "certificate of completion" after high school, the VE's opinion did not necessarily exclude jobs Ms. Thackery cannot perform. The court will first address whether the ALJ's determination at step three is supported by substantial evidence and then address, if necessary, Ms.

Thackery's argument that the ALJ's step five determination relies on an opinion by the VE that was based on a hypothetical unsupported by the evidence.

## I.      Requirements of Listing 12.05C

As noted above, listing 12.05 describes a severity of mental retardation that is presumptively disabling, so that if a claimant meets all of the requirements of the listing, she is entitled to benefits without regard to any analysis under steps four and five, including the formulation of a residual functional capacity.  *See Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002) (when claimant meets all of the criteria for a listed impairment, then the claimant is presumptively disabled and qualifies for benefits); *King v. Barnhart,* 2007 WL 968746 at *4 (S.D. Ind. Feb. 26, 2007) (12.05C's standards are designed to address situation where combination of low mental ability and another significant mental or physical impairment impede ability to work; [i]ts standards are designed to identify cases in which more detailed, individualized consideration of a claimant's situation is not justified").

Listing 12.05C states:

12.05  *Mental retardation.*  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .

* * *

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Listing 12.05C has three separate requirements: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22;[2] (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The issue in this case is whether the ALJ's determination that Ms. Thackery did not satisfy the first requirement is supported by substantial evidence. The second and third requirements are met by the evidence, as the Commissioner concedes. Ms. Thackery was administered the Wechsler Adult Intelligence Scale, Third Edition, in July 2007, and her verbal IQ score was 63; her performance IQ score was 73; and her full scale IQ score was 64; the ALJ did not doubt the validity of these scores. (*See* R. 24). The ALJ's decision concludes that at least one physical impairment imposes a significant work-related limitation of function (although she did not address it in the context of analyzing 12.05C). She describes that a rotator cuff tear to Mr. Thackery's left extremity and associated shoulder pain restricts Ms. Thackery's residual functional capacity so that she cannot use her left extremity for

---

[2]     Although the first requirement is generally expressed as a single requirement, it has at least two elements: that the claimant has subaverage intellectual functioning with deficits in adaptive functioning *and* that those deficits manifested before age 22. That is germane to this appeal, because much of the briefing focuses on whether the ALJ properly credited evidence of pre-age 22 onset. But as explained below (and as recognized by Ms. Thackery's reply brief), this appeal also turns on whether the ALJ properly determined that Ms. Thackery did not meet the "deficits in adaptive functioning" element.

overhead reaching and can never perform pushing or pulling of hand controls with
her left upper extremity.  (*See* R. 26, 29-30).

The ALJ decided that despite Ms. Thackery's low IQ scores, she did not meet
the first requirement of the listing.  She focused on the absence of evidence of
deficits in adaptive functioning and manifestation before Ms. Thackery turned 22
years old, which was in 1991. In support of this finding, the ALJ provided the
following analysis:

> In this case, the claimant reports that she was in special education
> classes while she was in school.  However, this is not corroborated by
> school records.  The claimant reported to both consultative examiners
> that she was able to live independently for two years from 2002 to
> 2004.  She is able to provide for her basic hygiene, perform household
> chores, to prepare meals from recipes and shop.  She has been able to
> obtain a driver's license.  She is capable of traveling independently to
> other towns.  She has performed semi-skilled jobs as a cashier and her
> earnings record indicates substantial earnings in the past, particularly
> during the years from 2000 through 2002 ($28,011.10; $31,708.77; and
> $36,290.06 respectively).  The State agency mental health
> professionals reviewed the evidence and concluded that,
> notwithstanding the IQ scores, the claimant exhibits signs and
> symptoms consistent with borderline intellectual functioning or an
> organic mental disorder and there is no evidence of deficits in adaptive
> functioning manifested prior to the attainment of age 22 (Ex. 15F, 16F,
> and 22F).  In light of the claimant's demonstrated level of functioning
> in the past, I concur with that assessment.  I find that the clinical
> findings do not satisfy the requirements for mental retardation and
> that this case is more properly evaluated under the criteria in 12.02
> rather than the criteria of 12.05.

(R. 24).

The ALJ elaborated on some of these matters in other portions of her
decision.  She discussed that Ms. Thackery (a) has had the same boyfriend for about
four years, who lives in Terre Haute; (b) has other friends in Terre Haute and drives

herself (one way more than an hour) two or three times each month to visit Terre Haute and stay there with friends; (c) reported that she enjoys reading as a pastime and reads either at the sixth or seventh grade level; (d) exercises at a local health club; (e) enjoys riding a bicycle and horseback riding; (f) enjoys going out to dinner and to movies with friends; (g) lived by herself from 2002 to 2004, and moved back into her mother's house when her finances did not permit independent living because she bought an expensive car and the payments hampered living on her own; (h) has regularly been employed and held one job, as a cashier at a fast food restaurant, for about seven years continuously; (i) quit her most recent job, which required 6 hours of work per day changing sales signs in a department store because of a problem with her supervisor and not because of any medical impairment; (j) regularly participates in a Bible study group; (k) regularly enjoys shopping; (l) does her own grocery shopping although she can find this "complex" because she often forgets things and has to return to the store; and (m) has no problems counting money and making change, and mostly can manage her funds independently, but had some trouble with money management as evidenced by her purchase of a car that was more expensive than her means allowed.

The reports of state-agency medical professionals referenced by the ALJ include findings that no listing is satisfied.  Dr. William Shipley, Ph.D., completed a Psychiatric Review Technique form dated April 14, 2008, to determine whether any mental disorders listing were satisfied, and he found none were. The form states his opinion that the evidence in the record reveals a disorder of "MMR [or, mild mental

retardation] – no evidence before age 22." (Dkt. 475).   The record evidence was reviewed again, and on June 11, 2008, Dr. Donna Unversaw, Ph.D., "affirmed" Dr. Shipley's conclusion and stated that Ms. Thackery's reports of the severity of the effects of her learning problems are not consistent with her actual functioning, her work history, and her overall [Medical Evidence of Record]." (Dkt. 655).   The ALJ also described in great detail the results of two mental status examinations by state-agency psychologists, one in August 2007 and the other in April 2008.   (*See* R. 317 and 462).

Ms. Thackery argues that the ALJ's very detailed discussion and analysis of Ms. Thackery's fairly high level of functioning does not support her conclusion that the first requirement of 12.05C was not met.   First, she faults the ALJ's comment that Ms. Thackery's enrollment in special education classes was not corroborated by school records, and argues that Ms. Thackery's testimony that she was in special education classes sufficiently proved this fact and by itself supplies sufficient evidence of deficits in adaptive functioning before age 22.

Ms. Thackery suggests that the ALJ's determination that Ms. Thackery did not meet 12.05C turned on some doubt that Ms. Thackery was assigned to special education classes in school, and had she believed this was so, she would have found—or even was required to find—that Ms. Thackery exhibited sufficient deficits in adaptive functioning before age 22 to satisfy the listing.   The court does not read the ALJ's statement regarding the lack of corroboration in school records to have the significance Ms. Thackery attributes to it.

In fact, the ALJ noted in her decision that with respect to Ms. Thackery's school education, Ms. Thackery's written statements provide that she completed 12 years of formal education, was in some special education classes, and instead of graduating with a "diploma," received a "certificate of completion." (R. 26). In this connection, she further noted that after high school, Ms. Thackery took night classes to obtain a GED, but did not receive one, although she can read (at the seventh grade level, according to a statement by Ms. Thackery to one of the state agency psychologists) and write, and was able to complete an "Activities of Daily Living" form with minimal assistance from her mother. It appears therefore that that the ALJ did not ignore—or necessarily disbelieve because of the lack of corroboration by school records—that Ms. Thackery was in some special education classes in school. Instead, acknowledging Ms. Thackery's assignment to special education classes, the ALJ noted that Ms. Thackery remained in school through the end of 12th grade and can read, write, and was able to understand and complete an SSA form with only minimal assistance. The ALJ's contrast of Ms. Thackery's special education classes with her achievement levels suggests to the court that the ALJ was noting that Ms. Thackery showed good functioning despite her enrollment in special education classes.

Ms. Thackery points out that this court stated in *Anthony v. Astrue,* 2011 U.S. DIST. LEXIS 75307 (S.D. Ind. July 12, 2011), that a claimant's enrollment in special education classes is one way she can show that she had subaverage intellectual functioning with deficits in adaptive functioning manifested before age

22.  But the court did not suggest that a claimant's enrollment in special education classes conclusively establishes the first requirement of listing 12.05C.  Nor is the court aware of any authority that assignment to special education classes—regardless of the other evidence analyzed—satisfies the first requirement of listing 12.05C.  *See Adkins v. Astrue,* 226 Fed. Appx. 600, 605 (7th Cir. 2007) (unpublished) (although claimant "completed the eighth grade in special education classes," that was insufficient to prove significantly subaverage general intellectual functioning or deficits in adaptive functioning before age 22).  *See also Yates v. Astrue,* 2009 WL 5207483 at **6-7 (S.D. Ala Dec. 30, 2009) (special education classes do not in themselves prove subaverage intellectual functioning with deficits in adaptive functioning before age 22).  The perfunctory treatment of relevant evidence by the ALJ in *Anthony* bears no resemblance to the detailed consideration given by the ALJ in this case.  In *Anthony,* the ALJ's entire treatment of 12.05C was in a one-sentence footnote that the claimant failed to show any deficits in adaptive functioning because she cares for children, drives, shops, and cooks.  *See id.*  In contrast, as noted above, the ALJ here discussed in detail Ms. Thackery's functioning, including her reported enrollment in special education classes.  But the ALJ weighed that evidence along with other evidence, as she was permitted to do, including evidence that Ms. Thackery attended high school through twelfth grade and can read and write.

The ALJ also found that Ms. Thackery has demonstrated relatively high functioning in many areas and "[i]n light of the claimant's demonstrated level of

functioning in the past," she concurred with the assessment of the state-agency medical professionals that the clinical findings "do not satisfy the requirements for mental retardation."  The ALJ provided a substantial number of examples of Ms. Thackery's normalized functioning and discussed matters that Ms. Thackery identified as struggles (*e.g.*, needing to return to the grocery store because she routinely forgets things).  The ALJ's conclusion, from her detailed description of Ms. Thackery's demonstrated life skills, that the first requirement of 12.05C was not met meets the substantial evidence test.  Among other things, the ALJ noted (1) Ms. Thackery's strong work history, which included substantial work before age 22 and the performance of semi-skilled jobs, (2) that she can master, and has mastered, tasks requiring simple reading and writing skills, (3) that she lived on her own, and (4) that she functions to a large extent independently in attending to all her personal needs and has a group of friends, a steady boyfriend, and a normal social life.  *See Novy v. Astrue,* 497 F.3d 708, 710 (7th Cir. 2007) (adaptive functioning refers to an individual's ability to cope with the challenges of everyday life and that a low IQ and intellectual abilities does not equate to mental retardation under the listing because a person with a low IQ nevertheless may be able to work).

The opinions of the state-agency psychologists who reviewed all of the record evidence (including Ms. Thackery's reports of special education classes in school) and determined that no listing was met also are substantial evidence on which the ALJ relied and which support her conclusion that listing 12.05C was not satisfied. *See Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (completed disability forms

in the record about whether a listing was met constitutes substantial evidence supporting an ALJ's step three finding where the ALJ did not reject evidence supporting the claimant's contrary position); *Scott v. Sullivan,* 898 F.2d 519, 524 (7th Cir. 1990).

In her reply brief, Ms. Thackery points to evidence that she does have some challenges in her adaptive functioning, including mismanagement of her checkbook, forgetfulness when doing grocery shopping, the need for multiple attempts to pass her driving test, and low reading ability. She maintains that Listing 12.05 doesn't require that the claimant have *no* adaptive functioning but that she have *deficits.* (Dkt. 25 at 2) That, of course, is an accurate statement of the law, but Ms. Thackery's argument appears to hinge on the assertion that the Listing is met so long as the claimant presents evidence of *any* challenge.

The Seventh Circuit explained in *Novy,* 497 F.3d at 710, that the term "deficits in adaptive functioning" "denotes inability to cope with the challenges of ordinary everyday life." That definition requires the ALJ to make a qualitative, not quantitative assessment. A claimant need not display *no* adaptive functioning to meet the Listing, but evidence that the claimant has *some* challenge or challenges is not conclusive either. Judge Hamilton's decision in *Hendricks v Astrue*, 2009 WL 648610 (S.D. Ind. March 11, 2009), makes this clear. In *Hendricks,* Judge Hamilton found that the ALJ had not considered at all the evidence of the claimant's inabilities to cope with the challenges of everyday life. In remanding for consideration of that evidence, he noted that the "evidence, if fully considered, may

14

not be enough to satisfy Listing 12.05.  Still, an ALJ must 'sufficiently articulate his assessment of the evidence to assure us that he considered the important evidence." *Id.* at *7(quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)).

The ALJ clearly did weigh the evidence of Ms. Thackery's challenges, along with the substantial evidence of her competencies.  Her determination that Ms. Thackery did not meet the requirements of Listing 12.05C is well supported by the evidence and properly articulated in her opinion.

## II.   The Hypothetical to the VE

Ms. Thackery argues that even if the court upholds the ALJ's step three finding, it must remand because the ALJ's hypothetical to the VE, on which her decision at step five was grounded, materially misstated Ms. Thackery's vocational qualifications.

At step five, the ALJ determined—based on a VE's opinion—that Ms. Thackery is capable of working as a cleaner/polisher (DOT #709.687-010), binder (DOT #724.687-010), or box sealing inspector (DOT 641.687-014), and those jobs exist in significant numbers in Indiana and the national economy.  (R. 36).  The VE testified that these jobs exist, in response to the ALJ's hypothetical, for a person who has certain capabilities and certain limitations.  The ALJ had asked the VE to consider a person who had the same vocational profile previously described (which was "younger person with a high-school education and . . . the same past work experience as the claimant," (R. 76)) and had an RFC with certain described physical limitations and "would be limited to occupations that did not require a

complex written communication and they would also need work limited to simple routine and repetitive tasks in a work environment free of any fast-paced production requirement." (R. 77).

When, at step five, an ALJ relies on the testimony of a vocational expert regarding jobs that fit particular functional abilities and provide a certain work environment, the claimant must of course actually fit the description. *E.g., Jelinek v. Astrue,* 662 F.3d 805, 813 (7th Cir. 2011) ("We have stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity. . . ."). There must be some assurance that the VE's testimony regarding available jobs took into account all limitations the ALJ has found. *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002). Otherwise, one cannot be assured that the VE's opinion includes only jobs that the claimant can perform. *Id.* As explained in *Steele*:

> The reason for the rule [that hypothetical questions to the VE must include all limitations supported by the evidence] is to ensure that the vocational expert does not refer to jobs that the applicant cannot work because the expert did not know the full range of the applicant's limitations. An exception therefore exists for cases in which the vocational expert independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them.
>
> *Id.*

Ms. Thackery points to two problems with the ALJ's hypothetical. First, she contends that the ALJ's reference to a person "with a high-school education" materially misstated her job qualifications, requiring remand. She also argues that the ALJ's hypothetical did not capture limitations arising from the ALJ's finding

16

that Ms. Thackery has moderate difficulties in concentration, persistence, or pace. The court addresses the latter argument first.

### A.  Moderate difficulties in CPP

The ALJ's hypothetical restricted the person to work requiring only simple, routine, and repetitive tasks in an environment "free of any fast-paced production requirement" and without "complex written communication."  These restrictions are supported by substantial evidence and they logically relate to Ms. Thackery's moderate difficulties.  The ALJ described that during mental consultative examinations, Ms. Thackery was "fidgety," but she did not require re-direction to complete psychometric testing, and the examiner found that her concentration and attention appeared to be intact.  An examiner also concluded that her cognitive abilities and level of concentration were sufficient "to complete tasks, make work related decisions, remember locations and remember work like procedures," conclusions the ALJ found were supported by the record and with which she agreed. (R. 25, 34).  She also noted that Ms. Thackery had expressed difficulty with "complex" written matters, including taking a driver's license test.

Ms. Thackery relies on the Seventh Circuit's decision in *O'Connor-Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010), to support her argument that the ALJ did not properly account for her moderate difficulties in concentration, persistence, or pace ("CPP").  But in *O'Conner-Spinner,* there was no apparent relationship between the sources of the claimant's difficulties in CPP and the limitations given by the ALJ in the RFC to account for mentally-impaired functioning.  That is not the case here.

17

Indeed, the facts here are analogous to the example the *O'Connor-Spinner* court provided where the ALJ's matching of the deficiencies in CPP with the functional limitations stated is sufficient.  In that example, the Seventh Circuit noted that where a claimant's moderate difficulties in CPP stem from anxiety or other stress, a hypothetical that references low-stress work, and a VE's opinion based on that hypothetical, sufficiently account for the mental limitation.  *Id.* at 619.  *See also Millken v. Astrue,* 397 Fed. Appx. 218, 221-22 (7th Cir. 2010) (ALJ's finding at step five upheld where ALJ effectively translated into her RFC a medical opinion in the record that despite the claimant's difficulties in CPP, she could perform unskilled work).  As noted above, this ALJ's hypothetical took into account Ms. Thackery's mental limitations—as described in the mental status examinations and on the mental residual functional capacity form in the record—by matching them to limits stemming from Ms. Thackery's intellectual deficiencies.  She limited her to simple and rote tasks that allow a slower pace and do not require reading and following complicated written instructions.  The court finds no error.

### B. "High School Education"

We are left with one, final matter – whether the ALJ's use of the descriptor "high-school education" in the hypothetical misstated Ms. Thackery's qualifications. Ms. Thackery did not in fact end up with a diploma after completing four years of high school but, after night school, only a "certificate of completion."  She told an examiner she had not "graduated" or "finished" high school.  The court finds that the ALJ's hypothetical did not misstate Ms. Thackery's functional qualifications

because the ALJ very specifically drew the VE's attention to the type of mental process limitations material to Ms. Thackery's functioning.  Moreover, the court cannot say it was inaccurate for the ALJ to note that Ms. Thackery had a high school education; she completed four years of high school and received a certificate of completion.  The court is not persuaded that the ALJ's hypothetical could have inadvertently overstated Ms. Thackery's cognitive abilities by referring to a person with a "high school education" when the ALJ was very specific that Ms. Thackery can do only simple, repetitive, and routine work in an environment that does not demand fast-paced production or the following of complex written instructions.[3]

Moreover, the court finds it appropriate to assume that the VE was listening during the hearing (as reinforced by the fact that the VE asking for follow-up information regarding work Ms. Thackery testified she had done in the past).  *See O'Connor-Spinner*, 627 F.3d at 614 (court may assume VE was familiar with the claimant's limitations "when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations"). Ms. Thackery testified at the hearing that she finished the 12th grade and earned "something kind of like a high school diploma," "close" to a high school diploma, and called a certificate of completion.  (R. 48).  Nothing suggests that the VE was misled

---

[3]      There is also no suggestion that the jobs the VE determined Ms. Thackery is capable of require a high school *diploma*.

19

about Ms. Thackery's education or the limitations of her cognitive functional abilities.[4]

For these reasons, the court finds that the ALJ's hypothetical sufficiently apprised the VE of all pertinent restrictions and limitations that the ALJ found were supported by the record.

## Conclusion

The standard of review is very narrow. The ALJ's step three and step five decisions are not infected by legal errors or serious misstatements of facts, but rather are supported by evidence that a reasonable person might accept as adequate. Accordingly, the Commissioner's decision that Ms. Thackery is not disabled is AFFIRMED.

So ORDERED.

Date: _03/29/2013_____

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

---

[4]     Moreover, the court finds it immaterial that for purposes of applying the Medical-Vocational Guidelines and determining disability or non-disability based on the grids, the ALJ classified Ms. Thackery as a person with a "limited" education, which means her education stopped between 7th and 11th grades. (R. 35). In other words, the presence of absence of a high school education versus a "limited" education may be important to distinguish disability from non-disability if the grids are used, but they were not used here. The ALJ did not use the grids because Ms. Thackery had additional limitations that are not captured by the grids. The ALJ instead relied on the VE's testimony, and the VE was present at the hearing by phone, heard Ms. Thackery testify that she finished 12th grade but earned a certificate of completion, and was restricted to jobs with the lower cognitive abilities specifically described by the ALJ.

Dstribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com